VOLPE et al. v. BENÁVIDES et al.
(No. 6235.)

(Court of Civil Appeals of Texas. San Antonio. June 11, 1919. Rehearing Denied June 28, 1919.)

1. WILLS ⬅═►566 — CONSTRUCTION — AMBIGUITY—VALUE OF COINS.

A bequest of a specified number of Mexican pesos is not ambiguous by reason of the subsequent divergence in the exchange of value of Mexican silver and Mexican gold coin.

2. APPEAL AND ERROR ⬅═►1071(1)—REVIEW—HARMLESS ERROR.

In a suit against executors, brought by legatees to recover the balance of legacy in Mexican pesos, an erroneous finding that the language of the will was ambiguous was harmless, where the construction adopted by the court was in legal effect that for which appellants contended.

3. WILLS ⬅═►566 — CONSTRUCTION—PAYMENT OF LEGACIES.

A will bequeathing a specified number of Mexican pesos must be construed to mean Mexican pesos, gold or silver, and gives the executors the option to pay either in silver pieces or gold pieces or in their equivalent value in United States money at the rate of exchange prevailing when payment is due.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by Maria Volpe de Benavides and others against Arturo Volpe and others, executors of the will of Miguel Volpe, deceased, to recover balances due on legacies. Judgment for plaintiffs, and defendants appeal. Judgment reformed and affirmed.

T. C. Mann, of Laredo, for appellants.

Hicks, Phelps, Dickson & Bobbitt, of San Antonio, for appellees.

MOURSUND, J. This suit was instituted by appellees, Maria Volpe de Benavides, Adela Volpe de Nava, and their husbands, against Arturo Volpe, Martin Volpe, and Ludovico Volpe, individually, and as executors. Maria Volpe de Benavides sought to recover $2,800 with interest, alleged to be due her as the first installment of a legacy to her under the will of her father, Miguel Volpe. Adela Volpe de Nava sought to recover $666.68, with interest, alleged to be the balance due her on the first installment of a legacy under the same will. There was bequeathed to Maria Volpe de Benavides the sum of 12,000 Mexican pesos and to Adela Volpe de Nava 10,000 Mexican pesos. The provisions of the will are fully shown in the findings of fact.

The contention of appellees was that a Mexican peso, as the words were used in the will, meant a Mexican silver dollar, or its equivalent in United States money at the time of such payment; while appellants, who were the executors under the will, contended that at the time of the execution of the will a Mexican peso was understood by the testator to be 50 cents in United States money, also that payment in any kind of pesos that were in use and circulation at the time of the execution of the will would constitute a compliance with the terms of the will. Acting upon their theory, appellants tendered appellees payment of the first installment at the rate of 50 cents per peso. The appellees demanded payment at the then value of silver pesos, and Maria Volpe de Benavides returned the check sent her, while Adela Volpe de Nava retained hers and sued for the difference between the amount thereof and the sum claimed by her. Appellants, as against her, pleaded accord and satisfaction by reason of the retention and cashing of the check by her.

The trial court rendered judgment to the effect that payment should be made one half in Mexican silver dollars or their equivalent in money of the United States and the other half in Mexican gold pesos or their equivalent in value. The amount adjudged to Mrs. Benavides was $2,536, and to Mrs. Nava $359.54.

The court made certain findings of fact, which are recited in the judgment, and afterwards filed findings of fact and conclusions of law.

The judgment contains the following recitals:

"* * * The court, after hearing the pleadings of the parties, the testimony adduced upon the trial, and the argument of counsel, is of the opinion that the testator at the time he made his will and used the words 'Mexican pesos' in naming the amount of the legacies left to his two daughters, Maria Volpe de Benavides and Adela Volpe de Nava, the real plaintiffs herein, intended by such expression 'Mexican pesos' to instruct his executors to pay such bequests in coin that was legal tender in the Republic of Mexico at the time of the making of said will, and the court having found from the evidence that at the date of the making of said will that both Mexican silver dollars and Mexican gold dollars was legal tender in Mexico and had a parity of value, that it is impossible at this time to find from the evidence which character of coin, gold or silver, the testator intended should ·be delivered to the plaintiffs by the executors in the

payment of such bequests, and that the intention and instructions of the testator will be best followed by requiring the executors to make all payments now due and to become due under the terms of said will and the bequests therein named, in payments consisting of one-half in Mexican silver dollars and one-half in Mexican gold dollars, or in lieu of the delivery by the executors of the said Mexican silver dollars and Mexican gold dollars, that they pay to the legatees, plaintiffs herein, the equivalent of such Mexican gold and silver dollars in United States money at the present current rate of exchange, which the court finds to be for Mexican silver dollars the sum of seventy-seven cents ($.77) each and for Mexican gold dollars the sum of forty-nine and eight-tenths cents ($.498) each."

The findings of fact are as follows:

"(1) The court finds that Miguel Volpe, deceased, died in Webb county, Tex., on the 14th day of December, 1915, leaving a will dated April 10, 1914, which will was duly admitted to probate in the county court of Webb county, Tex., on the 4th day of March, 1916, and that the defendants in this cause, to wit, Arturo Volpe, Martin Volpe, and Ludovico Volpe, were named as independent executors of said will therein, and that they qualified on the 24th day of March, 1916, and took the oath of office as required by law, and have ever since said time been acting as executors of such will.

"(2) I further find that Miguel Volpe, deceased, was a resident of Webb county, Tex., both at the time of making said will and at the time of his death; that he came to reside in Texas in 1914; and that prior thereto he resided in Mexico many years.

"(3) I further find that in said will he left a legacy to his daughter Maria Volpe de Benavides in the following language: 'I give and bequeath to my daughter Maria Volpe de Benavides the sum of twelve thousand Mexican pesos.' I further find that he left a legacy in said will to his daughter Adela Volpe de Nava in the following language: 'I give and bequeath to my daughter, Adela Volpe de Nava, the sum of ten thousand Mexican pesos.'

"(4) I further find that said will of Miguel Volpe, deceased, provided that such legacies to his said daughters should be paid to them within a reasonable time after the probate of said will if there was sufficient cash in the estate, but if, in the opinion of the executors, it was not convenient for them to pay said legacies or any of them within a reasonable time after the death of the testator, then he directed said legacies to be paid as follows: One-third of said legacies to be paid two years after the probate of the said will and one-third every two years thereafter until said legacies should be fully paid, said will providing that the judgment of the executors should be final and conclusive as to whether said legacies should be paid within a reasonable time after his death or in installments of one-third in two, four, and six years after the probate of the will and that the executors elected to pay said legacies one-third in two years and one-third in four years and one-third in six years after the probate of said will.

"(5) I further find that the said Arturo Volpe, Martin Volpe, and Ludovico Volpe are the residuary legatees of deceased under the terms of said will.

"(6) I further find that on March 4, 1918, the first installment of said legacies under the election of the executors became due, and that upon that date the said executors tendered to the legatees, plaintiffs herein, as the equivalent of the amount of Mexican pesos to which each were at that time entitled, valuing Mexican pesos at 50 cents each in United States money, which tender to the plaintiff Maria Volpe de Benavides was for the sum of $2,000 in United States money and was refused by her as not being the equivalent on that date of the amount and value of the Mexican pesos which she was entitled to receive under said will, and under the election of the executors thereof; that there was tendered to the plaintiff Adela Volpe de Nava, by said executors, the sum of $1,666.65 as the equivalent of the amount of Mexican pesos in United States money (being a valuation by the executors of Mexican pesos at fifty cents each) which she was entitled to receive at said time under said will, but that said amount was accepted by her under protest and not in full satisfaction of the amount of said legacy then due her; and that she made claim for a sufficient amount in addition thereto to compensate her in Mexican silver pesos for the full value of the installment of Mexican pesos due her under said will.

"(7) I find that on March 4, 1918, Mexican silver pesos were worth at their reasonable market value the sum of 67½ cents, and Mexican gold pesos were worth at their reasonable market value on said date the amount of 53 cents, in United States money.

"(8) I further find that at the time of the trial, November 21, 1918, Mexican silver pesos were worth at their reasonable market value the sum of 77 cents, and Mexican gold pesos were worth at their reasonable market value in United States money the sum of 49 $8/_{10}$ cents.

"(9) I further find that at the time of the making of the will of the testator, Miguel Volpe, deceased, to wit, the 10th day of April, 1914, and at the time of his decease on the 14th day of December, 1915, Mexican silver pesos and Mexican gold pesos had a parity of value and were exchangeable one with the other, dollar for dollar, and that said Mexican silver pesos and Mexican gold pesos were on both of said dates legal tender in the Republic of Mexico.

"(10) I further find that the estate left by said Miguel Volpe, deceased, was located largely in Webb county, Tex., and a part of said estate in the Republic of Mexico, and that said estate is solvent and there is sufficient property in the hands of the executors to pay all legacies set out in the will.

"(11) I further find that the words 'Mexican pesos' as used in said will in the vicinity of Laredo, Webb county, Tex., usually imported Mexican silver coins, but that in Mexico the said words might import either Mexican silver coins or Mexican gold coins.

"(12) I find that up to the year 1898 the only Mexican pesos in circulation were silver coins, one peso each, and that since said year the said silver coins, and also gold coins of five pesos each and gold coins of ten pesos each, have been and still are in circulation in that country, all legal tender.

"(13) I further find that the language 'Mexican pesos' used in the will of the testator, Miguel Volpe, deceased, is ambiguous by reason

of the subsequent divergence in the exchange value of Mexican silver and Mexican gold coin."

[1, 2] The thirteenth finding of fact is directly challenged, and we hold that the objection thereto is well taken. The language could not be ambiguous by reason of the subsequent divergence in the exchange of value of Mexican silver and Mexican gold coin. What the court meant, doubtless, was that the language is ambiguous, and the real meaning is important in view of the subsequent divergence in value of Mexican gold and silver. In view of the fact that the court's finding in his judgment, as to what the testator intended by the language, is, in legal effect, what appellants contend should be the construction to be placed on the language, appellants are not injured by the finding that the language is ambiguous. The other findings of fact are not attacked by either party, nor was any request made for additional findings, despite which fact there are quotations from the statement of facts in both briefs.

The court's conclusion of law was that under all the facts a fair and proper construction of the term "Mexican pesos" as used by the testator in the will requires that his executors pay the legacies one-half in Mexican silver coin and one-half in Mexican gold coin.

[3] The testator may have contemplated and meant either silver pesos or gold pesos, or, in view of their equality of value at the time of the making of the will, he may have contemplated that payment could be made in either gold or silver. The court did not find that he meant, by the use of the words "Mexican pesos," any particular kind of pesos; in fact, in the judgment is recited the finding that the testator intended by the words to instruct his executors to pay such bequests in coin that was legal tender in the Republic of Mexico at the time of making such will, and the court also found that at such date both Mexican silver dollars and Mexican gold dollars were legal tender in Mexico and had a parity of value. These findings simply mean that we are to consider the language in the will as reading "Mexican pesos, gold or silver." This being the case, it appears to us that the executors had the option to pay either in silver pesos or gold pesos, and that a delivery of the stipulated amount of either would discharge the obligation imposed upon them by the will. In order to discharge such obligation, it became necessary to go into the market and buy pesos, or to discharge the obligation in the value thereof in United States money. The executors did not go and buy the number of gold pesos to satisfy the obligation, but undertook to pay in money of the United States. If they had tendered the then value of gold pesos, we believe it would have been a compliance with the obligation resting upon them; there being no contention that any advantage would result to appellees from the delivery of the pesos instead of their equivalent in money of the United States. We see no theory upon which the compromise made in the judgment can be sustained, nor upon which appellees could be awarded the right to elect to receive the equivalent of silver pesos. In our opinion, the findings of fact preclude any theory which would lead to either of such results.

There is no finding of fact to the effect that the check to Mrs. Nava bore any notice that it was tendered in full payment of the first installment of the legacy, or that it was in fact accepted as such payment. The findings do not warrant a holding that she is precluded from recovering the difference between the sum received by her and the value of the stipulated number of gold pesos at the time the installment became due. If we were authorized under the assignments to decide the point on the evidence adduced instead of the findings of fact, we would be compelled to find, accepting as true the testimony which supports the judgment, that there was no accord and satisfaction as to the claim of Mrs. Nava.

The value of gold pesos on March 4, 1918, the date when the payments were due, was 53 cents, and the executors only paid or tendered 50 cents for each peso. Therefore the judgment will be reformed so as to allow Mrs. Benavides 53 cents for each peso which was to be paid her on March 4, 1918, with interest thereon at 6 per cent. to the date of the judgment, in all $2,210.90; and so as to allow Mrs. Nava an additional 3 cents for each peso she was to receive on March 4, 1918, with interest thereon to the date of the judgment, in all, $104.28.

Judgment reformed and affirmed.